The opinion of the court was delivered by
DeBlanc, J.
On the 25th of July 1865, plaintiff and defendants formed a commercial partnership for the transaction of a cotton factor-•age and general commission business, which expired on the 1st of June 1868.
On the 15th of February 1866, Hugh Allison alone was at the office of the partnership, his brother Andrew was absent from the City and 'Cooke at home and sick.
*964 One James R. Howard, wishing to obtain an advance of money went-—on that day — to Cooke’s house, and Cooke — by a written note — - referred him to Hugh Allison.
What became of that note? One of the bookkeepers said that,, some time after the transaction, he himself handed it to Hugh Allison, and at the latter’s request. A subpoena duces tecum was issued commanding its production by Hugh Allison, who answered: “I have not the note referred to, do not know any thing about it.”
David Oook testified that — to the best of his recollection — the purport of the note was that Howard wanted some monej’’ and to see what lie could do for him: no amount was therein mentioned, nor was it an order to pay the money. This statement is corroborated by the bookkeeper, who read the note and testified further that he thought that, by the terms of said note, the matter was left at Allison’s discretion.
Whether it was or not, Hugh Allison requested the bookkeeper to fill a check for $12,500, signed and handed it to Howard, who acknowledged, in writing, that he had received that sum from the firm. The-amount of the check was paid and debited to Howard.
Andrew Allison returned to the City, heard of the transaction, protested against it as having no connection with their legitimate business and insisted that it should be charged to Cooke’s account. According to Andrew’s declaration, Cooke — when informed of his determination— objected to it at first, and thereafter consented, remarking “that it was a good thing and that his partners would have none of the profits to arise therefrom.” Cooke admits that he then made a remark of that kind, and told his partners that — if they were dissatisfied with the transaction, he would take it for his own account: that they did not assent to his proposition, and Hugh Allison replied that if there was any thing to be made by it, he was entitled to his share.
The bookkeeper was directed by the brothers Allison to transfer to-Cooke’s account the amount of the check, and it was done. Cooke-swore that he had not authorized that transfer, and his declaration as to this fact is supported by those of the bookkeepers, who testified that he always objected to it, and — for that reason — would not allow the books, of the firm to be balanced.
Hugh Allison’s statement is that he paid the $12,500 on an order from Cooke, believing that — on Cooke’s return to the office, he would explain why this money was given to Howard : he failed to explain and —at his own request — the amount was charged against him. To the-knowledge of Hugh, Cooke never objected to that charge. His declaration, on this point, is contradicted by, and contradicts that of plaintiff and of the bookkeepers. The note, or — as he calls it — the order which he took from the files of the office, might have sustained his assertion *965 •and neutralized that of his partner and employees, but — when ordered •to produce it — his answer was “ that he knew nothing about it.”
When the advance of $12,500 was made to Howard, he was indebted to the firm for $1256, and had then shipped to it only six bales of cotton. Tt seems strange that — under such circumstances — Hugh Allison, who was not bound to do it, concluded to first pay him so large an amount, ¡and then await his partner’s return to ascertain why it was that the money had been given to Howard.
On the trial, Cooke objected to that part of Hugh and Andrew’s deposition and to the questions put to and answered by himself, tending to show that he had agreed to the transfer — from the firm’s account to his own — of the chai’ge of $12,500, on the ground that it was an attempt to prove — by parol evidence — that he had assumed to pay the debt of Howard. His exception was properly overruled. The object of the evidence thus admitted was to prove, and did establish that it was two of the partners and not the partnership who made a loan to Howard, and that the transfer of the charge from one account to the other was but the correction of a previous and erroneous entry. That correction was incomplete: the amount of the check should have been charged to Cooke, who — it appears — advised the making of the loan and approved it after it was made, and to Hugh Allison who, on a mere suggestion of Cooke, paid the money to Howard.
Andrew Allison’s statement is that said money was invested in Mexican Gulf Rail Road stock: that the intention to so invest was mentioned before he left the City, and that he opposed the transaction as having no connection with their legitimate business: that, when he returned to the City, and found that the loan had been made, he informed Cooke of his determination that said loan should be charged to his account: Cooke agreed to it and it was done.
Plaintiff denied that the money was advanced to Howard to invest in the stock of the Mexican Gulf Rail Road, and testified that the transaction was simply a loan on interest and commission. He, however, confessed that he had told the two brothers : “it is a good thing and if you are dissatisfied, I will take it myself,” and Hugh Allison alone replied, in substance, that if any profit came from it, he was entitled to his share.
It is difficult not to conclude that said loan was the transaction •opposed by Andrew Allison and disapproved by the advisers of the firm, before Andrew’s departure from the City, one which took place •during his absence, and against which he protested from the day on which it -was proposed, as not being connected with the legitimate business of the partnership. The lower court so believed, and its judgment is affirmed with ecsts.